FILED
2008 Jun-10 PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTH EASTERN DIVISION

| | |
|---|---|
| **SUSAN E. KELLER,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 5:07-CV-1098-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Susan Keller (hereinafter "Ms. Keller") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Keller timely pursued and exhausted her administrative remedies available before the Commissioner. This case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[1] In its review, this court finds that the ALJ's

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Keller was born in 1952, and was 54 years old at the time of the decision of the administrative law judge (hereinafter "ALJ"). (Tr. 15-23, 79). She has a high school equivalent education and past work experience as a nuclear inspector and engineer aide. (Tr. 23, 93-94, 98-123, 131-38, 140-43, 150, 158). Ms. Keller initially alleged disability beginning December 17, 2002, due to herniated discs in her back and neck, left knee problems sustained in a motor vehicle accident, and depression, but amended her onset date to July 1, 2003, on the advice of counsel. (Tr. 124). After careful review and evaluation of the evidence of record, and testimony from Ms. Keller and the vocational expert, the ALJ found that Ms. Keller retained the residual functional capacity ("RFC") to perform light work and could return to her past relevant work as a nuclear inspector and engineering aid. (Tr. 22, Finding Nos. 6, 7).

On May 22, 2003, Ms. Keller protectively filed a Title II application for a period of disability and DIB. Ms. Keller also protectively filed a Title XVI application for SSI on May 22, 2003. (Tr. 15). Thereafter, Ms. Keller filed a timely written request for hearing on November 14, 2003 (20 C.F.R. § 404.929 *et seq.* and

§ 416.1429 *et seq.*). After several postponements and a hearing on June 2006 at which Ms. Keller did not appear, Ms. Keller appeared and testified at a hearing held on July 21, 2006, in Huntsville, Alabama. (Tr. 15). Ms. Keller's applications for DIB and SSI were denied.

## **STANDARD OF REVIEW**[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion was supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion shall be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d at 1239.

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 27, 2008.

>   (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>   (4)   whether the claimant can perform her past work; and
>   (5)   whether the claimant is capable of performing any work in the national economy

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993 ) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairments. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Keller has the following severe combination of impairments: degenerative disc disease of the lumbar spine with disc herniation, possible torn cartilage of the left knee, degenerative disc disease of the cervical spine with disc herniation, alcohol abuse, depressive disorder, and residuals of rotator cuff repair on the right shoulder in March 2006. (Tr. 18). He determined this combination

of the claimant's impairments to result in more than minimal work-related functional restrictions. (Tr. 18). The ALJ did however find, with no objection by Ms. Keller, that her alleged mental impairments themselves were not severe. (Tr. 18).

Ms. Keller's physical impairments allegedly make it difficult for her sit or stand for very long, and give her arm, back and knee pain. (Tr. 19). Ms. Keller described her pain level as 10 out of 10 when she awakes and 8 out of 10 throughout the day. *Id*. She claims she cannot think straight because her pain is so bad. *Id*. The ALJ, after considering the medical evidence of record, found that Ms. Keller's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 20).

After review of the medical records, the ALJ determined that none of Ms. Keller's impairments qualify as one of the Secretary's listed impairments.

The ALJ determined that although Ms. Keller reported to her doctors that she had last worked in November 2002, her earnings records show that she earned almost $9,000 in 2004 and over $45,000 in 2005. (Tr. 22). The ALJ notes that not much is known about these jobs, but that they appear to be similar to the type work she had done in the past. *Id*. The work raised a presumption of substantial gainful activity after the alleged onset date of disability. The ALJ concluded that Ms. Keller's lies

6

about her work history raised "strong doubts about her credibility." (Tr. 22).

The ALJ determined that Ms. Keller has the RFC to perform a full range of light work. (Tr.19). The ALJ defined light work as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. (Tr. 19). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. (Tr. 19).

The ALJ concluded that Ms. Keller is capable of performing past relevant work as a nuclear inspector and engineering aid relying in part upon testimony from the vocational expert. (Tr. 22). More specifically, the vocational expert testified that the job of nuclear inspector was light and skilled and that of engineering aid was sedentary and skilled, as generally performed in the national economy. (Tr. 23). In comparing Ms. Keller's RFC with the physical and mental demands of this work, the ALJ determined that Ms. Keller is able to perform it as generally performed. *Id*. The ALJ found that Ms. Keller was not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id.*

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]  Ms. Keller asserts that there is error in law and fact that mandates reversal of the ALJ's decision and yields a finding of disabled.

### I. SUBSTANTIAL EVIDENCE EXISTS WHICH SUPPORTS THE COMMISSIONER'S DECISION THAT PLAINTIFF COULD PERFORM PAST RELEVANT WORK.

Ms. Keller, as the claimant, has the burden of proving that she is disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The Social Security Act states that a physical or mental impairment must be an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). The Commission's Regulations reassert Ms. Keller's burden to provide the relevant medical and other evidence she believes will prover her alleged disability as

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

a result of physical or mental impairments. *See* 20 C.F.R. §§ 404.1512(1), 416.912(a). However, it is the functional limitations caused by the impairments, not the impairments themselves, which may affect a claimant's ability to work. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In this case, Ms. Keller alleges that she became disabled on July 1, 2003, due to injuries sustained in a car accident that occurred on March 13, 2002. (Tr. 352, 354-355). However, at an administrative hearing, Ms. Keller testified that she worked after this accident until December 17, 2003, which was reportedly the last time she worked. (Tr. 355). Earnings records and other evidence show that in fact Ms. Keller also received an income of $8,957 from an employer in 2004 and over $45,000 in 2005. (Tr. 17, 87, 116-122, 188). She also engaged in work activity in 2006, earning more than $14,000. (Tr. 18). The ALJ noted that these amounts raised a presumption of substantial gainful activity under the regulations, but did not deny Ms. Keller's application at step one of the sequential evaluation as there was no evidence that the work activity was continuous. (Tr. 17-18).

Medical evidence in the record confirms the ALJ conclusion that Ms. Keller was not disabled. An MRI scan of the lumbar spine taken in 2002 revealed mild generalized disc degeneration with disc herniations at L3-L4 and L4-L5 and a minute

centrally bulging disc at L5-S1, but no stenosis. (Tr. 277). A cervical MRI showed disc herniations at multiple levels. (Tr. 228). However, nerve conduction studies performed on June 26, 2003, were normal and demonstrated no evidence of cervical or lumbar radiculopathy. (Tr. 260, 261, 263, 264). An examination conducted on April 2, 2003, revealed only moderate tenderness with normal neurological findings. (Tr. 265, 266). Spurling and straight leg raising tests were negative. (Tr. 266). Motor strength was 5 out of 5 with intact sensation and 2+ reflexes. *Id*. Ms. Keller was able to walk on her heels and toes and squat without difficulty. *Id*. Alexandra Leschinsky, M.D., a treating physician, advised Ms. Keller to only avoid deep squats and heavy lifting on July 10, 2002. (Tr. 225, 226). Dr. Gulati, a consultative examiner, noted that Ms. Keller could not do heavy lifting, but could perform sitting jobs without any difficulty. (Tr. 319). Therefore evidence in the record amply supports the ALJ's determination that Ms. Keller could perform past relevant work.

## II. THE ALJ APPROPRIATELY FOUND MS. KELLER'S SUBJECTIVE TESTIMONY AS TO PAIN AND LIMITATION OF FUNCTION NOT ENTIRELY CREDIBLE.

Ms. Keller argues that the ALJ did not properly apply the pain standard or properly discredit her subjective complaints of pain or her ability to work. (Pl.'s Br. at 8-14). The Social Security Act and Regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. *See* 42

U.S.C. § 423(d)(5)(a); 20 C.F.R. §§ 404.1529, 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Id.*; *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). When a claimant alleges disability through subjective complaints of pain or other subjective symptoms, the standard for evaluating these symptoms:

> [R]equires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560.

When the medical evidence indicates the existence of such an impairment, the fact finder must evaluate the credibility of the claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony. *See Hand*, 761 F.2d at 1549 n.6; 20 C.F.R. §§ 404.1529(c), 416.929(c). Here the ALJ considered Ms. Keller's subjective complaints and determined that her statements concerning her impairments, pain and their impact on her ability to do work were not entirely credible in light of the lack of significant neurological findings, normal nerve tests, and inconsistent statements made by Ms. Keller concerning her work activity. (Tr.

20-22).

Ms. Keller alleges disability due to complaints of neck, back, left shoulder and arm, and left knee pain after she was involved in a motor vehicle accident on March 13, 2002. (Tr. 20, 199-217). The Commissioner did not dispute the fact that Ms. Keller may experience some pain, discomfort, and limitations. MRIs of the left knee, cervical spine, and lumbar spine in June 2002 confirmed degenerative disc disease and disc herniation and bulging in the lumbar and cervical spine and grade III patellofemoral chondromalachia, joint effusion, and degenerative changes in the left knee. (Tr. 20, 251). However, the MRIs revealed no evidence of stenosis and examinations documented no significant neurological abnormalities to substantiate pain and other symptoms of a disabling nature. (Tr. 20).

Additionally, the record shows that Ms. Keller's pain and other symptoms decreased with treatment and that she did not require ongoing regular or frequent treatment. The Eleventh Circuit has recognized that a plaintiff's failure to seek treatment for a period of time, as Ms. Keller in the instant case failed to seek treatment for her alleged symptoms, is a factor which may be properly weighed against her. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).

More specifically, as pointed out by the ALJ, Ms. Keller was treated by Dr.

Leschinsky from March 2002 until July 2002. (Tr. 20, 218-257). By July 2002, Ms. Keller reported that with therapy, her pain decreased to a level 3 or 4 (on a pain scale of 1 to 10 with 10 being the worst pain). (Tr. 255). Despite some swelling, tenderness, and grinding in her knee, Ms. Keller admitted that physical therapy and anti-inflammatory medications had helped her overcome pain and discomfort in her cervical spine, lumbar spine, both shoulders, and left knee areas. (Tr. 225). More importantly, the ALJ noted the lack of treatment for seven months after September 2002 until April 2003 when Dr. Leschinsky last prescribed medication. (Tr. 20, 175-180).

    The ALJ also noted that Ms. Keller made inconsistent statements regarding her work activity that calls into question her credibility. (Tr. 22). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186 (S.S.A.). As discussed by the ALJ, Ms. Keller reported to Dr. Gulati that she last worked in November 2002, but her earnings record revealed that she earned almost $9,000 in 2004, and over $45,000 in 2005. (Tr. 22, 317). The ALJ observed that the jobs she held during this period appeared to be similar to jobs she held in the past as an inspector or engineering aide, which the vocational expert identified as being light and sedentary, respectively. (Tr. 22, 401, 402).

The ALJ also considered reports from her employers which indicate that Ms. Keller's work in these two positions was unsatisfactory. (Tr. 22). However, even assuming that her impairments did lead to her unsatisfactory performance at these jobs, the ALJ found that because Ms. Keller was not forthcoming about these particular work activities, that omission went against her credibility. *Id*.

The ALJ observed that in December 2005, Ms. Keller requested postponement of a disability hearing because she reportedly was in Louisiana taking care of a step-father who was ill. (Tr. 22, 48). Notably, Ms. Keller earned over $10,000 that month from HKA Enterprises and the following month earned over $12,000 from the same company doing relief work for Hurricane Katrina victims. (Tr. 118-119).

After considering a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed only for substantial evidence. If the ALJ refuses to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Jones v. Dep't of H.H.S.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The articulation of three reasons for rejecting a claimant's subjective complaints of pain has been held sufficient to support the ALJ's finding that they were not credible. *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). In Ms. Keller's case, the ALJ has cited at least three reasons for

14

finding her subjective allegations not entirely credible. (Tr. 17).

### III. THE ALJ PROPERLY WEIGHED THE MEDICAL OPINION AND OTHER EVIDENCE AND APPROPRIATELY DETERMINED THAT MS. KELLER RETAINED SUFFICIENT RESIDUAL FUNCTIONAL CAPACITY TO PERFORM LIGHT WORK.

The ALJ found that Ms. Keller retained a sufficient RFC to perform light work. (Tr. 19-22). RFC is a legal determination that is based on "all the relevant evidence in [a claimant's] case record" and refers to the most that a claimant can do despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). Although the burden of proving RFC resides with the claimant, the ALJ makes the determination of RFC on the Commissioner's behalf at the hearing level. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(e)(2), 404.1527(f)(2), 404.1546(c); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). The ALJ assesses a claimant's RFC based on all relevant evidence in the case record including medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, and medical source statements. *See S.S.R.* 96-8p, 1996 WL 374184 (S.S.A.).

In determining that Ms. Keller was capable of light work, the ALJ weighed the several medical opinions in the record and gave explicit and adequate reasons for the weight assigned to his RFC determination. (Tr. 20-22). The ALJ notes that a medical

opinion or note is not the same as an RFC determination. *See* 20 C.F.R. § 404.1527(e)(2). "Medical source statements are medical opinions and submitted by acceptable medical sources, about what an individual still can do despite a severe impairment(s) ... Medical source statements are based on the medical source's records and examination of the individual; *i.e.* their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individuals abilities." *See* S.S.R. 96-5p, 1996 WL 374183 (S.S.A.).

Generally, more weight is given to the opinion of a treating medical source than to a report of a consultative examination or brief hospitalization. *See* 20 C.F.R. § 404.1527(d)(2). However, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques. S.S.R. 96-2p, 1996 WL 374188 (S.S.A.). Even if a treating source's medical opinion is well supported, controlling weight may not be given to an opinion unless it is consistent with other substantial evidence in the case record. *Id.* In deciding the weight of a physician opinion, the ALJ considers the length of the treatment relationship, the nature and extent of the relationship, the supportability of the opinion with the record as a whole,

16

and the physician's specialization. 20 C.F.R. § 404.1527(d)(2-6). The ALJ may appropriately find good cause to reject a treating physician opinion when the opinion is not bolstered by the evidence, when the evidence supports a contrary finding; or when the opinion is conclusory or inconsistent with the doctor's own medical records. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (2004).

Ms. Keller relies on a medical evaluation of Dr. Leschinsky written in November of 2003, which includes no documentation that Dr. Leschinsky had even examined Ms. Keller since September of 2002. (Tr. 20). The ALJ correctly found that this report should be given little weight, especially given the lapse in time of over one (1) year since Ms. Keller had seen Dr. Leschinsky and the date of his report. Accordingly, it was proper for him to conclude that the other medical opinions and evidence available proved that Ms. Keller retained sufficient RFC to perform light work.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 10th day of June, 2008.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge