FILED

2008 Aug-25  AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SUSAN E. KELLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:07-CV-1098-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

---

## MEMORANDUM OF OPINION

## I.     INTRODUCTION

The plaintiff, Susan E. Keller, "Keller," appeals from the decision of the
Commissioner of the Social Security Administration ("Commissioner") denying her
application for Supplemental Security Income ("SSI") and Disability Insurance
Benefits ("DIB").  Keller has timely pursued and exhausted her administrative
remedies and the decision of the Commissioner is ripe for review pursuant to 42
U.S.C. § 1383(c)(3).

The court has reviewed the entire record in this case and is of the opinion that

the Commissioner's decision is supported by substantial evidence and that the correct legal standards were applied.  Accordingly the Commissioner's decision is due to be **AFFIRMED**.

## II.   FACTUAL HISTORY

Keller applied for DIB and SSI on May 22, 2003. (TR 15).  She alleged onset of disability beginning December 17, 2002.  (TR 15).  The claims were denied on October 10, 2003. (TR 15).  Following the denial, Keller timely requested a hearing, and following several postponements, a hearing was held in July 21, 2006.  (TR 15). The presiding ALJ issued a decision denying benefits on October 16, 2006. (TR 23). The Appeals Council denied Keller's request for review on April 27, 2007.  (TR 7). Keller sought court review of the decision, filing her Complaint in this court on June 11, 2007.  (Doc. 1).  Keller claims the ALJ issued the decision in error because the findings were not supported by substantial evidence.  (Doc. 1). Because Keller alleges that the ALJ's decision lacked substantial evidence, a review of the facts is necessary.

Keller claims she is disabled because she suffers from arm, back, and knee pain.  (TR 19).  She claims that her pain level is "10/10 when she wakes and drops to 8/10 throughout the day."  (TR 19).   She also claims that she sleeps poorly and must take medicines that hurt her stomach and cause drowsiness. (TR 19).

Keller, who had worked as a nuclear inspector engineering aid and was fifty

three at the time of the hearing (TR 22, 377) was injured in an automobile accident in March 2002. (TR 20). She was diagnosed with cervical sprain and knee contusion at an emergency room following the accident, upon which she was released. (TR 20).

Shortly after the accident, she began seeing Dr. Alexandra Leschinsky and received physical therapy from then until July 2002. (TR 20). The therapy was largely effective in reducing her pain level. (TR 20). Dr. Leschinsky stated that her prognosis for long-term recovery was "guarded" in July 2002, and that she should avoid "deep squats." (TR 20). Keller received little treatment after this date, until November 2003, when Dr. Leschinsky stated that she could only sit, walk, or stand for about three hours total out of an eight hour day. (TR 20).

In April, 2003, Keller sought treatment from Dr. Selinder Aggarwal, who provided both medication and physical therapy. (TR 20). Dr. Aggarwal's physical examination revealed no abnormalities, and diagnostic testing showed no evidence of any cervical radiculopathy. (TR 20). Keller stopped seeing Dr. Aggarwal in August, 2003, because she no longer had insurance. (TR 20).

Then, in January, 2004, Keller began seeing Dr. Scott Sondes, and reported pain at the highest level, i.e., a 10/10, but also stated that she only needed medication at certain parts of the day, with activity. (TR 21). Also, although Keller reported that he left knee would frequently lock up, it did not do so under Dr. Sondes' tests. (TR

3

21).  Dr. Sondes noted that Keller's pain appeared well-controlled, and noted that trigger point injections had entirely relieved pain in the past.  (TR 21).  Dr. Sondes also performed a trigger point test on Keller (TR 21).  After several months, in April, 2004, Dr. Sondes performed an assessment of Keller in which he determined that she could only sit, walk, or stand for one hour out of an eight hour day.  (TR 21).

Keller received treatment from Dr. Prem Gulati in December, 2005.  (TR 21).  Upon his initial assessment, he found nothing to substantiate any of Keller's symptoms, although he did note mild tenderness in the trapezoidal area.  (TR 21).  He found that Keller was limited to sitting, standing or walking six hours out of an eight hour day.  (TR 21).  Dr. Gulatti also concluded that Keller could do sitting jobs without any difficulty.  (TR 21).

In making his assessment, Dr. Gulatti relied on Keller's statement that she had not worked since November, 2002. (TR 22).  However, she had in actuality earned nearly $9,000 in 2004, and over $45,000 in 2005. (TR 22).  Keller did not reveal much information about this work at her hearing, but only noted that she had worked for a company called "HKA" in a "FEMA job."  (TR 22).

Keller underwent surgery in March, 2006 to repair a torn rotator cuff on the shoulder that had not suffered an injury during her accident.  (TR 22).  Keller injured her shoulder while working for FEMA. (TR 22).

Based on this evidence, the ALJ found that Keller was not disabled.  (TR 23).

With the facts established, the court now turns to the substance of Keller's appeal.

## III.   STANDARD OF REVIEW

The Court's role in reviewing claims brought under the Social Security Act is

a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d

1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See*

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide

facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*

"The substantial evidence standard permits administrative decision makers to act with

considerable latitude, and 'the possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th

Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates

against the Commissioner's decision, the Court must affirm if the decision is

5

supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.   ANALYSIS

In reviewing the decision of an ALJ in a social security case, the court is limited to determining whether the correct legal standards were applied, and whether the ALJ's decision was supported by "substantial evidence." *See Lewis v. Callahan*, 125 F.3d 1436, 1429 (11th Cir. 1997).

### A.   Legal Standards Applied

The ALJ used the appropriate legal standards in deciding Keller's case. First, to qualify for benefits, a claimant must suffer from an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). "Physical or mental impairment" is defined by the Social Security Act as "an impairment that results from anatomical, physiological, or psychological

6

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Taking guidance from the statutory definitions, the applicable regulations provide for a five-step process by which an ALJ should evaluate the claimant's disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of his physical and mental impairments combined. *Id.* These impairments must be severe and must meet the duration requirements before a claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). The decision depends on the medical evidence in the record. If the claimant's impairments are not severe, the analysis stops. *Id.* Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, the analysis proceeds to the fourth step.

The fourth step requires determination of whether the claimant's impairments prevent him from returning to his past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  As to this criterion, the regulation states:

> If we cannot make a decision based on your current work activity alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past.  If you can still do this kind of work, we will find that you are not disabled.
> *Id.*

Upon determination that the claimant cannot do any of the work he has done in the past, step five requires the court to consider the claimant's residual functional capacity, as well as the claimant's age, education, and past work experience in order to determine if he can do other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Following the above-cited legal framework, the ALJ found that Keller had not engaged in substantial activity on a continuous basis.  (TR 17).  Next, the ALJ found that Keller suffered from "the following severe combination of impairments: degenerative disc disease of the lumbar spine with disc hernation, possible torn cartilage of the left knee, degenerative disc disease of the cervical spine with disc herniation, alcohol abuse, depressive disorder, and residuals of rotator cuff repair of the right shoulder in March 2006."  (TR 18).  Proceeding to the third step of the required analysis, the ALJ found that Keller did not have "an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (TR at 19). Then, in the fourth step of the analysis, the ALJ found that Keller "[had] the residual functional capacity to [perform] a full range of light work." (TR at 19). In the second part of the analysis under step four, the ALJ concluded that Keller was "capable of performing past relevant work as a nuclear inspector and engineering aide." (TR 22). Accordingly, the ALJ reached the conclusion that Keller was not suffering from a "disability" within the meaning of the Social Security Act.

Keller does not challenge the legal standards applied by the ALJ. The ALJ's decision both correctly identified and applied the correct legal standards. Instead, Keller challenges the ALJ's decision on the ground that it was not supported by substantial evidence. The court now addresses this challenge.

B.    Supported by Substantial Evidence

Keller challenges the ALJ's finding that she had the residual functional capacity (RFC) to perform light work. (Doc. 7 at 10). She alleges that the decision was defective in two respects: (1) the ALJ did not give proper weight to Keller's testimony of pain and other subjective symptoms, and (2) the ALJ did not provide a proper basis for rejecting the opinions of treating physicians. (Doc. 7 at 10,14).

In reviewing the ALJ's finding on this issue, this Court must affirm the opinion

of the administrative court unless the ALJ's decision lacked substantial evidence.
*Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.2002).  "Substantial evidence
must do more than create a suspicion of the existence of the fact to be established."
*Id*.  The evidence must be"relevant evidence as a reasonable person would accept as
adequate to support a conclusion." *Ingram v. Commissioner of Social Sec. Admin.*,
496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233,
1239 (11th Cir.1983)).   "Even if the evidence preponderates against the
[Commissioner]'s factual findings, [the court] must affirm if the decision reached is
supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (11th Cir. 2007)
(citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "[W]ithin this
narrowly circumscribed role, [courts] do not act as automatons.  [A court] must
scrutinize the record as a whole to determine if the decision reached is reasonable,
and supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir.1983) (internal quotations and citations omitted).

> 1.   Substantial evidence supported the decision to discredit Keller's
>      pain *testimony.*

The Eleventh Circuit's decision in *Holt v. Sullivan*, 921 F.2d 1221 (11th
Cir.1991), "requires that an ALJ apply a three part 'pain standard' when a claimant
attempts to establish disability through his or her own testimony of pain or other

subjective symptoms." *Id.* at 1223.  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  A claimant who testifies to disabling pain and satisfies the pain standard followed in *Foote* must be found disabled <u>unless that testimony is properly discredited</u>.  *Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1195 (N.D. Ala. 2007). (Emphasis supplied).

Keller and the Administrator both argue at length why the pain standard either has or has not been satisfied.  (Docs. 7 at 9-12, 8 at 6-15).  Both arguments misunderstand the nature of the ALJ's finding.  The ALJ did not conclude that the pain standard had not been satisfied.  Indeed, the ALJ found that the pain standard was satisfied.  (TR 20)  ("After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms.").  This finding is explicit and quotes, almost verbatim, the language used in *Foote*.  But, despite this finding, the ALJ found that Keller was not disabled because he found that her testimony was "not entirely credible."  (TR at 20).  Thus, in reviewing the ALJ's decision, this Court is

bound to look at credibility and not whether the pain standard used in *Foote* is satisfied.

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* at 1561-1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)).  When an ALJ issues a clearly articulated credibility finding that has substantial supporting evidence, it should not be disturbed. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986).  But, when an ALJ makes no credibility finding, there are grounds to remand the decision.  *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).

In this instance, the ALJ produced several well-supported reasons for finding that Keller's testimony was not credible.  Having reviewed the administrative record, it is understandable why the ALJ might reach this conclusion.  Keller was entirely inconsistent about her employment after her disabling event.  She initially told her treating physician, Dr. Gulati, that she had not worked since November 2002.  (TR 22, 317).  Dr. Gulati relied on this evidence in concluding that she could not work a full eight hour day. (TR 21).  However, she had in fact worked several jobs that were similar to her previous position.  (TR 22).  Keller also requested postponement of a

12

previous hearing in December 2005, because she was allegedly caring for her ill stepfather, but the ALJ noted that she had been working in Louisiana at this time. (TR 22).  She failed to report the extent of this activity at her hearing in July, 2006. (TR 22).

Keller's testimony regarding her pain level is also inconsistent.  The ALJ noted that Keller claimed her pain "is 10/10 when she awakes and only drops to 8/10 throughout the day."  (TR 19).  However, other medical records noted that physical therapy had "helped" Keller, though at times she had reported that therapy only "helped somewhat."  (TR 20).  Despite these claims, she reported her current pain level as only "5/10 and at worst was 9/10."  (TR 20, 263).  She also claimed the pain caused severe inability to sleep.  (TR 20).  However, after several months in which she received no medical treatment, Keller reported that she had little trouble sleeping. (TR 22).  Additionally, Keller complained that Naprosyn makes her sick to her stomach (TR 20), but she continued to take the medication until 2006.  (TR 22).

To affirm the ALJ's decision, this Court need not conclude that the ALJ was right; it need only conclude that the decision "is reasonable, and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). The ALJ's decision in Keller's case easily meets this standard.  The court articulated several grounds documented in the record that gave reasons to doubt Keller's

credibility.  Accordingly, the Keller's challenge to the ALJ's decision fails in this respect.

> 2.      Substantial evidence supported the decision to reject the opinions of treating physicians.

As a second grounds for remanding this case, Keller argues that the ALJ erred by failing to properly credit the medical opinion of her treating physicians.  For the reasons discussed below, this argument also fails to satisfy the standard for remand.

The opinion of a treating physician must be given substantial weight unless the ALJ has "good cause" to make a contrary finding.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists where: (1) the opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Failure to articulate the reasons for giving less weight to the opinion of a treating physician is grounds for reversal.  *Id.*  If an error is harmless, in that it does not contradict the ALJ's ultimate finding, the decision will stand, even if the treating physician's testimony was not given proper weight.  *See Dorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).  Here, the ALJ articulated reasons for discrediting the testimony of treating physicians, thus the question is whether he had "good cause" for doing so.

The ALJ discredited the opinions of several treating physicians.  Keller does

not specify which decisions to discredit the testimony were not supported by substantial evidence. (Doc. 7 at 15). Therefore, the court will address the ALJ's finding as to each treating physician.

Following her disabling event in March, 2002, Keller received treatment from Dr. Leschinsky, who treated her until July 2002. (TR 20). At this time, Dr. Leschinsky determined that Keller should avoid "deep squats" and "heavy lifting." *Id.* No evidence suggests that Keller later saw Dr. Leschinsky, but in 2003, she produced an assessment form indicating that Keller could only sit, walk, or stand for three hours in an eight hour work day. *Id.* The ALJ did not give this latter opinion weight because there was no documentation of any treatment after September 2002, i.e., the opinion was not bolstered by the record. *See Lewis*, 125 F.3d at 1340. The only feasible way Dr. Leschinsky's opinion could have been formed is through the subjective testimony of Keller, whose credibility had already been deemed suspect. (TR 20).

Next, the ALJ discredits the opinion of Dr. Sondes, who Keller saw from 2004 until April 2004. (TR 21). Initially, Dr. Sondes reported that Keller's pain appeared well-controlled. *Id.* Keller indicated that had received trigger point injections that provided total relief for her pain. (TR 291). Dr. Sondes performed a trigger point examination (TR 290) that identified several points, but the ALJ noted that this

15

depended entirely upon Keller's subjective response and her credibility had already been found lacking.  (TR21).  In April 2004, Dr. Sondes reported that Keller could only sit or stand one hour in an eight hour day.  (TR 21, 303).  The ALJ discredited this opinion because it was not supported by previous reports by Dr. Sondes.  (TR 21).  He had used no diagnostic testing to support his finding except for a subjective trigger point test.  *Id.*  His previous assessments indicated that Keller's pain was treatable.  *Id.*

Finally, the ALJ discredited the testimony of Dr. Gulati, who provided treatment from June, 2005 through July, 2006.  (TR 21-22).  Dr. Gulati initially filled an assessment form stating that Keller could sit, stand, or walk for six hours out of an eight hour day.  (TR 21, 319).  She had a "normal physical exam with subjective complaints of pain."  (TR 319).  Dr. Gulatti suggested in this assessment that she could do sitting jobs without any difficulty.  (TR 319).  However, during this time period, Keller was working jobs that involved light work in Louisiana.  (TR 22).  Based on these inconsistencies, the ALJ gave Dr. Gulatti's assessment little credibility.  (TR 22).  In part, this depended on a finding that Dr. Gulatti had not known that Keller was working at the time; indeed she reported to Dr. Gulatti that she had not worked since 2002.  (TR 22).  Given these problems with her credibility, and Dr. Gulatti's reliance on subjective evidence, the ALJ chose to give little weight to

his assessments. *Id.*

The ALJ's decision not to credit the opinions of the above-discussed three treating physicians was supported by substantial evidence. Given the inconsistencies with the reports as to each doctor and the fact that Keller was working at the time the doctors indicated she was unable to work, there was substantial evidence to support the ALJ's decision. Thus, since the decision "is reasonable, and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983), it must be upheld.

## V.      CONCLUSION

Consistent with the reasons set forth in this Memorandum of Opinion, the court finds that the ALJ's decision is, in all respects, supported by substantial evidence. Therefore, the ALJ's decision is due to be affirmed. An order will be entered consistent with this opinion.

**DONE and ORDERED**, this the 25th day of August, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge